IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dana Marie Callaham, | C/A No. 0:12-1913-GRA-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Dana Marie Callaham ("Callaham"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In January 2010, Callaham applied for DIB, alleging disability beginning October 30, 2009. Callaham's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 11, 2011, at which Callaham, who was represented by Russell Disparti, a non-attorney representative, appeared and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



testified. After hearing testimony from a vocational expert, the ALJ issued a decision on December 6, 2011 finding that Callaham was not disabled. (Tr. 9-18.)

Callaham was thirty-nine years old at the time of her alleged disability onset date. (Tr. 51.) She completed a general equivalency diploma ("GED") and has past relevant work experience as a supply clerk, a sales clerk, an assistant manager in a jewelry store, and a home healthcare nurse. (Tr. 186, 191.) In her application, Callaham alleged disability since October 30, 2009 due to depression; anxiety/panic disorders; arthritis in knees, back, and neck; carpal tunnel syndrome; and back and left leg injury at work. (Tr. 185.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since October 30, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: anxiety, depression, degenerative joint disease of the knees, and chronic lower back pain (20 CFR 404.1520(c)).

    *   *   *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).

    *   *   *

5. . . . [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that the claimant can occasionally climb ladders and climb. She is limited to unskilled, simple, repetitive work with no more than frequent interactions with the public and coworkers.

    *   *   *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

    *   *   *

7. The claimant was born . . . [in] 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

Page 2 of 12



8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 11-17.) On May 4, 2012, the Appeals Council denied Callaham's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

### ISSUE

Callaham raises the following issue for this judicial review:

I.        Is The ALJ Decision Without Support of Substantial Evidence Because The ALJ Failed to Give Good Reasons For Rejecting the Opinions of Three Treating Physicians?

(Pl.'s Br., ECF No. 13.)

### DISCUSSION

**A.    Treating Physician**

Callaham argues that the ALJ failed to properly consider the opinion of her treating physicians.[3] Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal

---

[3] Although Callaham indicates that she is challenging the ALJ's decision to reject the opinions of *three* treating physicians, she only provides arguments challenging the ALJ's rejection of the opinions of *two* treating psychiatrists, Drs. Khizar Khan and Ernest Martin. To the extent that Callaham is referring to Dr. Susan Martin as the third treating psychiatrist, the court observes that Dr. Susan Martin does not appear to have issued an opinion; rather, she treated Callaham in conjunction with Dr. Ernest Martin.



picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' "  Id. (quoting Craig, 76 F.3d at 590).

In this case, Callaham argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to give good reasons for assigning the opinions of Drs. Khizar Kahn and Ernest Martin little or minimal weight.  The record demonstrates that Dr. Khan provided Callaham psychiatric treatment from October 2009 through August 2010 (Tr. 323-28, 407-11, 438-40) and Drs. Ernest and Susan Martin provided her psychiatric treatment beginning in October 2010 and were still treating her at the time of her hearing before the ALJ approximately one year (Tr. 472-85; see also Tr. 46).[4]

Dr. Kahn's records observe that when Callaham first presented for treatment in October 2009, she was oriented in time, space, and place with fair grooming; that she was emotional with a

---

[4] Prior to receiving treatment from these specialists, it appears that Callaham received treatment for depression from her family physician.



depressed mood and congruent affect; that she made fair eye contact with productive speech; that her thought processes were overall goal oriented; that she remained overwhelmed; and her insight and judgment were intact. (Tr. 328.) Dr. Kahn diagnosed Callaham with Major Depressed Disorder, Moderate to Severe without Psychotic Features; Generalized Anxiety Disorder; and Panic Disorder without Agoraphobia, and he assessed a current GAF of 55 to 60.[5] (Id.) Dr. Kahn's treatment notes from November 2009 through August 2010 include similar observations and her diagnoses remained mostly unchanged.  For example, the records continued to indicate that Callaham was oriented to time, space, and place; presented with fair grooming; maintained intact insight and judgment; and denied psychosis, sucidiality, and homicidiality.  During this time, Dr. Kahn described Callaham as cooperative, overwhelmed, sad, dysphoric, anxious, emotional, and tearful, and he adjusted her medications several times.  (See Tr. 323-26, 407-11, 438-40.)

On May 12, 2010, Dr. Kahn completed an insurance form entitled "Work Ability Status Sheet," in which he opined that Callaham had moderate to severe limitations and that she was "unable to return to work because of having depressed mood, anxiety, [and] panic attacks." (Tr. 414.) Dr. Kahn stated that he was unable to determine when Callaham could return to work because of her depression and anxiety. On September 1, 2010, Dr. Kahn completed a form indicating his

---

[5] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation.  Id. at 32-33; see also Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"). According to the DSM-IV, a GAF score between 51 and 60 may reflect "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)." Id. at 34.  However, the court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF.  American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



opinion as to the presence or absence of various mental symptoms and limitations. Specifically, Dr. Kahn checked boxes indicating that Callaham had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence, or pace; and had one or two episodes of decompensation per year.[6] (Tr. 443.) Dr. Kahn also checked that Callaham had moderate limitations in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. (Tr. 446-48.) In the other listed areas, Dr. Kahn checked that Callaham had no significant limitations. (Id.)

The record also contains medical records from Drs. Martin from October 2010 through July 2011. During Callaham's initial visit with Dr. Ernest Martin, she reported that Dr. Kahn recommended that she "find another psychiatrist as [Dr. Kahn] didn't see her getting any better." (Tr. 480.) Dr. Martin found that Callaham was casual and somewhat unkempt with a mildly depressed mood and flat affect and that Callaham was alert and oriented to all spheres with good judgment and insight but with significant difficulty with concentration. Callaham reported racing

---

[6] Callaham also points out that Dr. Kahn indicated the presence of symptoms included in the "paragraph A" criteria of Listings 12.04 and 12.06. This does not appear to be inconsistent with the ALJ's opinion as she found that Callaham did not satisfy the "paragraph B" criteria and therefore, did not meet or medically equal Listing 12.04 or 12.06. (Tr. 12.)



thoughts and no current suicidal ideation. Dr. Martin diagnosed Depressive Disorder Recurrent. (Tr. 480-81.) During follow-up visits for therapy and medication management, Dr. Martin's records reveal adjustments to Callaham's medications and reports of improvement, that her medications are working appropriately or working well, and even a reduction in medication.[7] (See Tr. 472, 474, 476, 477, 483.)

On March 23, 2011, Dr. Ernest Martin completed the same set of forms Dr. Kahn had previously completed on September 1, 2010, indicating his opinion as to the presence or absence of various mental symptoms and limitations. Specifically, Dr. Martin checked boxes indicating that Callaham had marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; extreme deficiencies of concentration, persistence, or pace; had four or more episodes of decompensation per year; and has a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. (Tr. 465-66.) Callaham contends that Dr. Martin's responses on this form indicate that Callaham meets or medically equals Listings 12.04 and 12.06. (See Tr. 463-66.) Additionally, except for Callaham's ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, Dr. Martin checked that Callaham had marked or moderate limitations in her abilities to understand and remember; to sustain concentration and persist; to interact socially; and adapt. (Tr. 468-70.) On September 21, 2011, Dr. Ernest Martin also completed a form indicating that Callaham had major depression (recurrent) and checked that she

---

[7] The court notes that on one occasion Callaham reported panic attacks that did not occur daily but requested relief "if they occur." (Tr. 475.) On another occasion Callaham reported an increase in some symptoms that were attributed to her disability claim, and Dr. Susan Martin noted that Callaham calmed once her forms were completed. (Tr. 473.)



had severe limitations, "significant loss of psychological, physiological, personal and social adjustment." (Tr. 488.)

The ALJ summarized the doctors' respective medical records. In giving little weight to Dr. Kahn's May 2010 opinion that Callaham is unable to work, the ALJ specifically observed that Dr. Kahn's September 2010 opinion noted only moderate limitations, and that the evidence did not support Dr. Kahn's opinion that Callaham had repeated episodes of decompensation, each of an extended duration, as Callaham "has had no psychiatric hospitalizations and remains capable of performing some level of housekeeping, cooking, taking care of her young daughter, driving, and shopping." (Tr. 15.) In giving minimal weight to Dr. Ernest Martin's opinion, the ALJ found that his statements concerning Callaham's limitations "are clearly inconsistent with longitundinal record[s] of the claimant's activities and functioning as well as Dr. Martin's treatment records showing the effectiveness of the claimant's medications." (Id.)

Callaham appears to challenge each of the various reasons the ALJ gave for discounting these opinions as inadequate and/or improper.[8] Upon review of the ALJ's decision, the record, and the parties' arguments, the court finds that Callaham has failed to demonstrate that the ALJ's opinion is unsupported by substantial evidence or based on an error of law. It is clear from the ALJ's opinion that she applied the factors listed in 20 C.F.R. § 404.1527 and discussed in controlling caselaw. Callaham has not demonstrated that there are clinical observations and findings to support the functional limitations opined by Drs. Kahn and Martin that would render the ALJ's opinion unsupported by substantial evidence. See 20 C.F.R. § 404.1627(c)(4); Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own

---

[8] The court observes that Callaham has cited no controlling caselaw in support of her positions; rather, she relies on caselaw from other circuit courts and district courts.



treatment notes); see also 20 C.F.R. § 404.1527(c)(2) (permitting an ALJ to consider whether the medical opinion is "inconsistent with the other substantial evidence in your case record"). Moreover, notwithstanding Callaham's argument to the contrary, the court finds that the ALJ's decision is supported by an April 2010 psychological consultative examination, to which the ALJ gave great weight as thorough and consistent with the evidence of record. (See Tr. 15, 385-87); Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Callaham has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 25, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).